Dear Ms. Baier:
You have requested an opinion of this Office regarding where the Louisiana Department of the Treasury should deposit certain funds recently paid to the State to account for shortcomings from the federal government for Outer Continental Shelf oil and gas royalties due the State.
In 1983, the federal Minerals Management Service (MMS) issued two leases in federal waters designated West Delta Block 17 (lease OCS-G 5668) and West Delta Block 18 (lease OCS-G 5669). These federal leases were located adjacent to leases in Louisiana waters (leases SL10087, SL10088, and SL10187). In 1986, Louisiana and its lessees filed a motion for a temporary restraining order and preliminary injunction alleging, inter alia, that the federal lessee was draining gas reserves from State lands. Following years of litigation and negotiation, Congress instituted a study which determined that net drainage of Louisiana gas resources indeed had occurred in favor of the federal government.
As compensation for the above-mentioned drainage of State minerals, Congress authorized, through the Oil Pollution Act of 1990 (P.L.101-380, Sec. 6004[C]), an appropriation to Louisiana to cover the State's losses due to the net drainage of minerals that was found. Although an initial appropriation of $4,000,000.00 was made in FY 1991, it was not implemented and Louisiana did not get paid. It was not until the Energy Policy Act of 2005 was passed that the appropriation to Louisiana was implemented. Pursuant to this implementation, the federal and State governments entered into a Memorandum of Understanding (MOU) that outlines how the funds are to be paid. Recently, the Louisiana Department of Natural Resources (DNR) received $4,001,246.10 and asked the Fiscal Division of the Louisiana Department of the Treasury (LDT) to classify the funds.
In your request letter, you indicate that there are ambiguous terms that make the classification of the funds in question difficult. The Oil Pollution Act of 1990 refers to the funds as "compensation . . . for net drainage of oil and gas *Page 2 
resources . . ." Later, the Energy Policy Act of 2005 and the MOU refer to the funds as "royalty relief" or "royalties." You question where, in any fiscal year, the LDT should deposit these funds.
As you are aware, La.Const. Art. VII, Sec. 9(B) requires that all State money (with one limited exception) deposited in the State treasury be credited to a special fund designated as the Bond Security and Redemption Fund (BSRF). In each year, an amount is allocated from BSRF to pay full faith and credit obligations of the State. Thereafter, money in BSRF is credited as provided by law, and if no law provides for the disposition of the money, it is credited to the State general fund. This opinion addresses the disposition of the funds at issue once an amount sufficient to pay all obligations that are secured by the full faith and credit of the State have been sufficiently allocated from the BSRF.
Outer Continental Shelf (OCS) oil and gas royalties that inure to the State are dedicated, by constitutional amendment, to use for the protection and restoration of Louisiana's coastal areas. These monies are deposited, pursuant to La.Const. Art. VII, Sec. 10.2(E)(1), into the Coastal Protection and Restoration Fund (CPRF). Following the above-noted deposit to the BSRF, as well as deposits to political subdivisions, the Wildlife and Fisheries Conservation Fund, and the Education Quality Trust Fund,[1] OCS revenues go to the CPRF. La.Const. Art. VII, Sec. 10.2(B)( 1).
The question of whether the subject funds are properly allocated to the CPRF is really one of the classification of those funds. Although the Oil Pollution Act of 1990 classifies the funds as "compensation," the money is in fact reimbursement to the State for amounts owed that the State would have earned as royalties or severance taxes. It is thus apparent that the later classification by the Energy Security Act of 2005 and the MOU as "royalty relief" and "royalties" is more accurate when considering the source of the funds.
In addition, although we are of the opinion that the subject funds are not "compensation" such that they would be routed through the BSRF to the general fund, we are also of the opinion that the funds are not payments in the form of a settlement as contemplated by La.R.S. 30:136.3. This statute establishes the Mineral Resources Operation Fund, and provides in pertinent part:
 B. Out of the funds remaining in the Bond Security and Redemption Fund, after a sufficient amount is allocated from that fund to pay all obligations secured by the full faith and credit of the state which become due and payable within any fiscal year as required by Article VII, Section 9(B) of the Constitution of Louisiana, the *Page 3 
treasurer in each fiscal year shall pay into the fund revenues and amounts from the following sources:
 (1) An amount equal to one million six hundred thousand dollars received by the state through the office of mineral resources from court-awarded judgments and settlements.
Under the facts that you have related in your request letter, it is apparent that these funds were appropriated for the purpose of settling litigation. Additionally, pursuant to the MOU, the funds are received by the State through the Office of Mineral Resources. However, although these funds were paid to the Office of Mineral Resources and they are something of a settlement to litigation, the funds were definitely not "court-awarded." As your letter relates, these funds were appropriated to the State by Congress, thus making them, if even a settlement, a legislatively-awarded settlement — a classification that does not fall under La.R.S. 30:136.3. Accordingly, it is our opinion that no portion of the funds must be allocated to the Mineral Resources Operation Fund.
Because it is our opinion that the funds are classified as royalties and are not a "court-awarded judgment or settlement," it is further our opinion that those funds should be deposited into the CRPF, pursuant to La.Const. Art. VII, Sec. 10.2.
Trusting that this adequately responds to your request, we remain,
 By:
 Ryan M. Seidemann
 Kennetn L. Roche, III
 Assistant Attorneys General
[1] La.Const. Art. VII, Sec. 10.2(A)(2)-(3).